IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| DUANE WILLETT,<br><br>        Plaintiff,<br><br>v.<br><br>STEVEN TURLEY et al.,<br><br>        Defendants. | **MEMORANDUM DECISION<br>AND ORDER**<br><br>Case No. 2:10-CV-382 DB<br><br>District Judge Dee Benson |

Plaintiff, Duane Willett, an inmate at the Utah State Prison, filed this pro se civil rights suit under 42 U.S.C. § 1983. *See* 42 U.S.C.A. § 1983 (West 2012). Plaintiff was allowed to proceed *in forma pauperis* under 28 U.S.C. § 1915. *See* 28 U.S.C.A. § 1915 (West 2012). Before the court are Plaintiff's Motion to Appoint Counsel and Defendants' Motion to Dismiss Amended Complaint.

## I. Motion for Appointed Counsel

Plaintiff moves for appointment of counsel to represent him in this case. Plaintiff's motion was filed in conjunction with his Amended Complaint and consists of only the standard fill-in-the-blank form with no supporting memorandum explaining the grounds for his request.

It is well established that plaintiffs in civil cases do not have a constitutional right to counsel. *See Carper v. Deland*, 54 F.3d 613, 616 (10th Cir. 1995); *Bee v. Utah State Prison*, 823 F.2d 397, 399 (10th Cir. 1987). However, a district court may, in its discretion, appoint counsel for indigent inmates under 28 U.S.C. § 1915(e)(1). *See* 28 U.S.C.A. § 1915(e)(1) (West 2012);

*Carper*, 54 F.3d at 617; *Williams v. Meese*, 926 F.2d 994, 996 (10th Cir. 1991).  When deciding

whether to appoint counsel, the court considers a variety of factors "including 'the merits of the

litigant's claims, the nature of the factual issues raised in the claims, the litigant's ability to

present his claims, and the complexity of the legal issues raised by the claims.'"  *Rucks v.*

*Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995) (quoting *Williams*, 926 F.2d at 996).  "The

burden is upon the applicant to convince the court that there is sufficient merit to his claim to

warrant the appointment of counsel."  *McCarthy v. Weinberg*, 753 F.2d 836, 838 (10th Cir.

1985).

Weighing the above factors, the court concludes that appointed counsel is not warranted

at this time.  At this stage of the litigation the only issue before the court is the sufficiency of

Plaintiff's Amended Complaint.  Moreover, it does not appear that the legal or factual issues

presented here are especially complex or that Plaintiff is unable to adequately represent himself

at this stage of the proceedings.  If the case reaches a point where appointed counsel is warranted

the court will address the matter *sua sponte*.  Thus, Plaintiff's motion for appointed counsel is

denied.

## II.  Plaintiff's Allegations

Plaintiff's Amended Complaint alleges denial of due process in violation of the Fifth and

Fourteenth Amendments based on his placement in administrative segregation without a hearing

and the repeated denials without due process of his requests for a housing transfer.  Plaintiff also

asserts a claim of cruel and unusual punishment under the Eighth Amendment based on the

conditions in administrative segregation.  The Amended Complaint names as defendants Tom

2

Patterson, Executive Director of the Utah Department of Corrections; Steven Turley, Warden of the Utah State Prison; Coleen Gabitas, Deputy Warden; and, Sharon Damico, Sergeant. Plaintiff seeks compensatory damages, punitive damages and costs.

The following undisputed facts form the basis for Plaintiff's claims and Defendants' motion to dismiss:

        1.      In the fall of 2001, Plaintiff was incarcerated at the Timpanogos Facility at the Utah State Prison in Draper, Utah, following conviction on a charge of capital murder. (Second Am. Compl. ["Am. Compl."] at 3.5 (Doc. no. 21)); *see also State v. Willett*, 909 P.2d 218, 225 (Utah 1995).)

        2.      In early October 2001, another prisoner told Sergeant Sharon Damico, an officer at the Timpanogos Facility in the Utah State Penitentiary, that two inmates incarcerated on murder charges were planning to escape by crashing the culinary truck through the gates. (Am. Compl., Ex. A). Sergeant Damico passed this information along to prison authorities who initiated an investigation into the matter. A prison investigator later determined that Plaintiff was one of those alleged to be involved. (*Id.*)

        3.      Based on the investigation report, Plaintiff was placed on a temporary restriction order and was moved to the administrative segregation section of the Uinta facility at the Draper Prison "due to an active plan to escape." (Am. Compl. at 3.5, Ex. B-1.) The Uinta facility is a more secure facility than the Timpanogos facility, but both are within the Utah State Penitentiary in Draper. (E.g., Am. Compl. at 3.5.) Plaintiff's security classification, which in part determines where Plaintiff is housed, was reviewed

3

on October 10 and October 16, 2001, and his classification was deemed appropriate due to the escape plan. (Am. Compl., Ex. B-1.)

4.      Plaintiff's security classification was maintained through an Executive Director Override, which was approved by the classification review officer due to the apparent risk to the institution and escape plans. The override kept Plaintiff in the Uinta facility. (Am. Compl. Ex. B-1.)

5.      Plaintiff did not formally grieve or otherwise complain about his housing assignment for the first two years of his confinement at the Uinta facility. However, in his 2002 annual review, Plaintiff refused to sign the recommendation that Plaintiff continue to be classified at "Level 2" security and remain in Uinta. (Am. Compl., Ex. B-1.) In March 2003, Plaintiff requested a copy of all evidence used to substantiate the escape allegations and received the prison investigator's report. (Am. Compl. at 3.6). In October 2003, Associate Warden Dan Leatham, a nonparty, overruled the recommendation of Plaintiff's caseworker that Plaintiff be returned to a lower security classification. (Am. Compl., Ex. B-1.) On December 4, 2003, Associate Warden Leatham responded to Plaintiff's request to remove the security override. In the document, Leatham noted that because Plaintiff's crime "received an unusually greater degree of public attention" and notoriety, and in light of Plaintiff's alleged escape plans, it was "necessary to augment the security precautions to ensure your commitment to the [prison]." (Am. Compl., Exs. B-2, J-4.) Associate Warden Leatham further wrote that the executive decision to tighten security was a "prudent and necessary response" to the

4

factors laid out above to protect the community, and that "at this time, you are still considered a significant risk[,] and it has been determined that your level two housing assignment is appropriate for that risk." (*Id.*) From 2003 through 2006, records demonstrate that Plaintiff had offender management reviews at least annually, and in each instance, prison officials determined that the security override should remain in place and that Plaintiff should not be transferred out of the Uinta facility. (Am. Compl. at 3.6, Exs. B-3, B-5, B-6.) Plaintiff did not initiate an assessment challenge or otherwise formally grieve his placement in the Uinta facility during that time. During this time Plaintiff was seen and treated at least once by a physician for complaints related to his back. (Am. Compl., Ex. J-8.)

6.    In early 2007, Plaintiff wrote letters to prison officials requesting removal of the override. Various prison officials responded, explaining the reasons that Plaintiff was kept in the Uinta facility. Hearing Officer Tom Anderson specifically noted that Plaintiff's housing assignment was not based on his behavior in the Uinta facility, but the assignment was "reasonable and appropriate" "given the combination of [Plaintiff's] conviction, escape plan involvement and the fact that [Plaintiff did] not have a parole date." (Am. Compl., Exs. B-7, J-1, J-2, J-3, J-6, J-7.) Defendant Coleen Gabbitas, Deputy Warden, was one of the prison officials who responded to Plaintiff's request to remove the override.

7.    Plaintiff alleges that in 2007 he initiated grievances with the prison regarding the override. (Am. Compl. at 3.6) Grievance records show that Plaintiff

5

initiated two grievances, each of which was denied at the final stage of the grievance process, Level 3.  (Am. Compl., Exs. D, E-1, E-2, E-3.)  In October 2008, Plaintiff wrote to Warden Steve Turley, asking for assistance with his situation, and in 2009, Plaintiff wrote to Governor Huntsman and Governor Herbert.  (Am. Compl., Exs. J-5, F-1, F-2, F-3, G-2.)  Thereafter, in 2009, Plaintiff's security rating was reduced, and on or about April 29, 2009, Plaintiff was moved to the less restrictive Wasatch facility.  (Am. Compl. at 3.8, Ex. G-1.)  Plaintiff wrote to Warden Turley, thanking him for "taking an active role or interest in my welfare," and noting that Turley's "quick and promp[t] action . . . could possibly be a life saver . . . ." (Am. Compl. Ex. G-3.)

### III.  Motion to Dismiss

Defendants move to dismiss Plaintiff's Amended Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure on several grounds.  First, Defendants assert that Plaintiff's claims stemming from his initial transfer to administrative segregation in 2001 are time-barred under the applicable statute of limitations.  Second, Defendants assert that Plaintiff's allegations regarding the denial of his transfer requests from 2006 onward, which are not time-barred, are insufficient to state a due process claim.  Third, Defendants assert that even if Plaintiff's allegations supported a constitutional claim, Defendants are entitled to qualified immunity because the rights at issue were not clearly established at the time of the alleged violations.  Fourth, Defendants assert that Plaintiff's allegations regarding his conditions in the Uinta facility do not show that he was subjected to cruel and unusual punishment.   Finally, Defendant Damico seeks dismissal on the ground that the Amended Complaint fails to show an affirmative link

6

between her actions and Plaintiff's alleged injuries. Plaintiff has had ample opportunity to respond to Defendants' motion which is now properly before the court.

## A. Legal Standard

A motion to dismiss under Rule 12(b)(6) requires the court to decide whether the factual allegations made in the complaint, if true, would entitle the plaintiff to some sort of legal remedy. To state a viable claim "[t]he complaint must plead sufficient facts, taken as true, to provide 'plausible grounds' that discovery will reveal evidence to support the plaintiff's allegations." *Shero v. City of Grove*, 510 F.3d 1196, 1200 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965 (2007)). "Factual allegations [in a complaint] must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965 (2007). Or, in other words, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Id.* Additionally, "the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for [his] claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). The "requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them." *Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008).

When deciding a motion to dismiss the court must accept all well-plead facts as true and draw reasonable inferences from those facts in favor of the non-moving party. *Ridge at Red Hawk, L.L.C.*, 493 F.3d at 1177. However, legal conclusions, deductions, and opinions couched

as facts are not presumed to be true, and the court must disregard conclusory allegations without supporting factual averments. *See, e.g., Erikson v. Pawnee County Bd. of County Comm.*, 263 F.3d 1151, 1154-55 (10th Cir. 2001). When a civil rights complaint contains only "bare assertions" involving "nothing more than a 'formulaic recitation of the elements' of a constitutional . . . claim," the court considers those assertions conclusory and does not afford them the presumption of truth. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1951 (2009) (quoting *Twombly*, 550 U.S. at 554-55).

## B.  Time-Barred Claims

Defendants contend that Plaintiff's claims related to his initial transfer to the Uinta facility are barred by the statute of limitations applicable to this case.[1] Claims under 42 U.S.C. § 1983 have a statute of limitations equal to the "personal injury statute of the state in which the federal district court sits." *Mondragon v. Thompson*, 519 F.3d 1078, 1082 (10th Cir. 2008). Utah's personal-injury statute of limitations is four years. Utah Code Ann. § 778B-2-306(3); *Fratus v. DeLand*, 49 F.3d 673, 675 (10th Cir.1995)(recognizing that Utah's four-year, catch-all statute of limitations applies to § 1983 actions). Federal law determines when a cause of action accrues and when the statute runs. *Mondragon,*519 F.3d at 1082. The claims accrue when the facts supporting the cause of action "are or should be apparent." *Fratus*, 49 F.3d at 675 (citations and quotations omitted).

---

[1] In its order directing Plaintiff to amend his complaint prior to service, the Court alerted Plaintiff to the statute of limitations issue here. (Order to Amend Deficient Compl. (Doc. no. 11) at 5.)

8

Plaintiff's claim regarding his initial transfer to administrative segregation without due process rests on the allegations that Plaintff was "transferred to administrative segregation on unfounded and unreliable testimony," that he was moved "for something he never planned or committed, nor was it ever proved," and that prison officials engaged in a "fraudulent transfer" of Plaintiff to the Uinta facility. (Am. Compl. at 3.6, 3.7.) Each of these events occurred in October of 2001 and should have been readily apparent to Plaintiff at the time of his transfer; therefore, the statute of limitations on this claim expired in October of 2005. Because Plaintiff did not file his original Complaint in this case until April 29, 2010, *see* Compl. (Doc. no. 6), this claim, and any claims stemming from actionable events occurring before April 29, 2006, are barred by the statute of limitations.[2]

## IV. Remaining Due Process Claims

Defendants assert that Plaintiff's allegations regarding the denial without due process of Plaintiff's challenges to his continued placement in administrative segregation from April 2006 onward are insufficient to state a due process claim under the Fourteenth Amendment. Specifically, Defendants assert that Plaintiff was not entitled to due process in relation to these challenges because his housing conditions were not so harsh as to implicate constitutional protections. Defendants further assert that even if due process protections did apply, Plaintiff was afforded sufficient process to satisfy constitutional requirements. Finally, Defendants

---

[2] Even assuming that Plaintiff's cause of action did not accrue until March of 2003, when he received the investigator's report showing the factual basis for the transfer (Am. Compl. at 3.5), all of the events which occurred in 2001 would still be time-barred.

contend that even assuming a constitutional violation occurred, they are entitled to qualified immunity because the relevant due process standard was not clearly established at the time of the alleged violations.[3]

### A. Due Process Standard

As a general rule, an inmate has no constitutionally protected liberty interest in any particular living condition or prison classification. *See Wilkinson v. Austin*, 545 U.S. 209, 221 (2005); *Hewitt v. Helms*, 459 U.S. 460, 468 (1983), abrogated in part on other grounds by *Sandin v. Conner*, 515 U.S. 472, 483 (1995); *Templeman v. Gunter*, 16 F.3d 367, 369 (10th Cir. 1994). This is because an inmate "is not entitled to a particular degree of liberty in prison," *Templeman*, 16 F.3d at 369, and because "the transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence." *Hewitt*, 459 U.S. at 468. A liberty interest is implicated only when a reclassification imposes an "atypical or significant hardship on the inmate in relation to the ordinary incidents of prison life," or threatens to lengthen his term of confinement. *Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995).

To determine whether an inmate's housing assignment imposes an "atypical and significant hardship," the Tenth Circuit routinely considers four factors: (1) whether the

---

[3] Defendants also assert that Plaintiff failed to timely exhaust his administrative remedies regarding this claim as required under the Prison Litigation Reform Act. *See* 42 U.S.C. § 1997e(a). However, because this argument requires facts beyond the face of the pleadings and attached exhibits, Defendants did not formally raise this argument here but reserved the right to do so on summary judgment.

segregation relates to and furthers a legitimate penological interest; (2) whether the conditions of confinement are extreme; (3) whether the placement increases the duration of confinement; and, (4) whether the placement is indeterminate. *Estate of DiMarco v. Wyo. Dep't of Corr.*, 473 F.3d 1334, 1342 (10th Cir. 2007). When conducting this analysis, courts must be "mindful of the primary management role of prison officials who should be free from second-guessing or micromanagement from the federal courts." *Id.*

### B. Sufficiency of Plaintiff's Allegations

Defendants assert that the facts here do not support the finding of a protected liberty interest because the conditions in Uinta were not extreme, Plaintiff's transfer did not lengthen the term of his confinement or sentence, and the transfer related to and furthered a legitimate penological interest, namely preventing an escape. Defendants admit, however, that the indeterminacy of Plaintiff's confinement to administrative segregation weighs in his favor.

The Court is not convinced that Plaintiff's allegations regarding his long-term confinement in administrative segregation are insufficient to allege an atypical and significant hardship. Although Plaintiff's Amended Complaint does not provide specific details about his conditions, it does allege that he was in "maximum security" confinement, a "horrible place," in which he was "often restricted to his cell 23-hours a day" and offered "very limited outdoor exercise" which caused his health to slowly deteriorate. (Am. Compl. at 3.7–3.8.) These allegations, combined with the fact that Plaintiff was kept in administrative segregation for nine years, are sufficient to plausibly allege an atypical and significant hardship. In the recent case of *Toevs v. Reid*, ___ F.3d ___, No. 10-1535, 2011 WL 2437782 (10th Cir. June 20, 2011), the

11

Tenth Circuit found a Colorado inmate's indeterminate commitment to administrative segregation, which ultimately lasted seven years, sufficient to support a finding of an atypical and significant hardship. The *Toevs* court found the indeterminacy of the commitment to be a compelling factor, despite the other factors weighing heavily in the defendants' favor. *Id.* at *4.

Plaintiff's allegations are also sufficient to plausibly allege a denial of due process. Under Supreme Court precedent issued well before the events here, inmates confined under conditions amounting to an atypical and significant hardship were entitled to meaningful periodic reviews of their status. *See Hewitt v. Helms,* 459 U.S. 460, 103 S. Ct. 864, (1983), *abrogated in part on other grounds by Sandin,* 515 U.S. at 483. In *Hewitt,* the Supreme Court stated that "administrative segregation may not be used as a pretext for indefinite confinement of an inmate. Prison officials must engage in some sort of periodic review of the confinement of such inmates." *Id.* at 477 n. 9. Such review requires "'(1) a sufficient initial level of process; i.e. a reasoned examination of the assignment; (2) the opportunity for the inmate to receive notice and respond to the decision; and (3) safety and security concerns to be weighed as part of the placement decision.'" *DiMarco,* 473 F.3d at 1344 (quoting *Wilkinson,* 545 U.S. at 226–27). More recently, in *Toevs,* the Tenth Circuit clarified that "a 'meaningful' review is one that evaluates the prisoner's current circumstances and future prospects, and, considering the reason(s) for his confinement to segregation, determines, without preconception, whether that placement remains warranted." *Toevs,* ___ F.3d at ___, 2011 WL 2437782 at *6.

Plaintiff's Amended Complaint alleges sufficient facts to plausibly support the conclusion that Defendants failed to provide him meaningful periodic reviews of his security classification

12

and housing status from April 2006 until his transfer in April of 2009. Plaintiff states that after

several years in administrative segregation following the alleged escape plot his caseworker

recommended that Plaintiff be moved back to the general population but Defendants summarily

overruled the recommendation based on the Executive Director Override ("EDO"). Plaintiff

further asserts that he had no effective means of challenging the EDO and spent years writing

letters and filing grievance trying to get it lifted to no avail. Plaintiff ultimately had to write to

the Utah Governor's office before he finally received a transfer back to general population.

Thus, Defendants' motion to dismiss this claim is denied.

### V. Eighth Amendment Claim

The Eighth Amendment's prohibition on cruel and unusual punishment requires that

prison officials "provide humane conditions of confinement by ensuring that inmates receive the

basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable

measures to guarantee inmates' safety." *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998).

An Eighth Amendment conditions-of-confinement claim consists of both an objective and

subjective component. The objective component is met only if the condition complained of is

"sufficiently serious." *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S. Ct. 1970, 1976 (1994). A

condition is sufficiently serious if it poses "a substantial risk of serious harm" to the inmate. *Id.*

The subjective component of a conditions-of-confinement claim requires the plaintiff to show

that the defendant exhibited "deliberate indifference" to the inmate's health or safety. *Farmer*,

511 U.S. at 832. Deliberate indifference "requires both knowledge and disregard of possible

risks, a *mens rea* on a par with criminal recklessness." *Despain v. Uphoff*, 264 F.3d 965, 975

13

(10th Cir. 2001). The defendant must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

Plaintiff's allegations are not sufficient to make out an Eighth Amendment claim. As previously noted, aside from the fact that Plaintiff was held in administrative segregation, the Amended Complaint includes few, if any, facts regarding the specific nature of his living conditions. Plaintiff's vague assertions that he was "put under a lot of mental, emotional and physical stress" and housed under "harsh conditions" do not support the conclusion that Plaintiff was subjected to cruel and unusual punishment. (Am. Compl. at 3.7–3.8.) In fact, most of Plaintiff's allegations concerning his Eighth Amendment claim are actually more relevant to his Due Process claims. Thus, Defendants' motion to dismiss Plaintiff's Eighth Amendment claim is granted.

## VI. Defendant Damico's Motion to Dismiss

Defendant Damico moves for dismissal from this case on the ground that Plaintiff's Amended Complaint does not affirmatively link her to any alleged violation of Plaintiff's rights. Defendant Damico was a sergeant in the Timpanogos unit who allegedly received the tip about an escape plot and reported it to prison officials. (*See* Am. Compl. at 3, Ex. A.) Plaintiff asserts that Damico's actions "cause[d] plaintiff to be segregated on a false conspiracy to escape charge without doing any investigation into the credibility of this claim . . . ." (*Id.* at 3.) Plaintiff further alleges that Damico's "reckless actions caused plaintiff to suffer 'a wanton and unnecessary infliction of pain,' because of her actions and by her omissions ultimately caused Plaintiff's

14

transfer to maximum security segregation." (*Id.* at 3.7).

It is well-settled that a Section 1983 plaintiff must allege facts showing "that each Government-official defendant, through the officials own individual actions, has violated the Constitution." *Iqbal*, ___ U.S. at ___, 129 S. Ct. at 1948. "The relevant inquiry is whether an official's acts or omissions were the cause--not merely a contributing factor--of the constitutionally infirm condition . . . ." *Tafoya v. Salazar*, 516 F.3d 912, 922 (10th Cir. 2008). (citations and quotations omitted). In other words, a plaintiff must show "an affirmative link" between each defendant's conduct and the alleged constitutional deprivations. *Stidham v. Peace Officer Standards & Training*, 265 F.3d 1144, 1156–57 (10th Cir. 2001).

Plaintiff's allegations are not sufficient to affirmatively link Defendant Damico to any violation of Plaintiff's civil rights. Plaintiff does not allege that Damico was directly involved in the decision to transfer Plaintiff to administrative segregation, nor did she have any control over Plaintiff's return to general population. As Plaintiff's Amended Complaint and attached exhibits show, Damico simply received a report of a planned escape and forwarded the information to superiors and a prison investigator. (Am. Compl. at 3.7, Ex. A.) Even construed liberally, Plaintiff's allegations do not show that Defendant Damico "set in motion a series of events [she] knew or reasonably should have known would cause others to deprive plaintiff of [his] constitutional rights." *Trask v. Franco*, 446 F.3d 1036, 1046 (10th Cir. 2006). Thus, Defendant Damico's motion to dismiss is granted.

## VII. Qualified Immunity

Defendants move for dismissal of Plaintiff's remaining claim on the basis of qualified

immunity.  The doctrine of qualified immunity shields government officials from individual

liability for civil damages "insofar as their conduct does not violate clearly established statutory

or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*,

457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982).  When a defendant asserts a qualified immunity

defense, the burden shifts to the plaintiff, who must meet a "heavy two-part burden." *Albright v.*

*Rodriguez*, 51 F.3d 1531, 1534 (10th Cir. 1995).  Plaintiff must first establish that the facts, taken

in the light most favorable to plaintiff, show that the officer's conduct violated a constitutional

right. *Saucier v. Katz*, 533 U.S. 194, 200, 121 S. Ct. 2151, 2155 (2003).  If Plaintiff establishes a

violation of a constitutional or statutory right, "the next, sequential step is to ask whether the

right was clearly established." *Id.* at 201.  If the plaintiff fails to satisfy either part of this "heavy

two-part burden," the Court must grant the defendant qualified immunity and dismiss the

deficient claims.

Although qualified immunity can be raised in a motion to dismiss under Rule 12(b)(6),

"summary judgment provides the typical vehicle for asserting a qualified immunity defense."

*Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004).  Moreover, "[a]sserting a qualified

immunity defense via a Rule 12(b)(6) motion [] subjects the defendant to a more challenging

standard of review than would apply on summary judgment." *Id.*

As previously discussed, the Court finds Plaintiff's allegations sufficient to support a due

process claim based on the denial of meaningful periodic reviews of his segregated confinement

between April 2006 and April 2009.  Thus, the only question here is whether the right to such

reviews was clearly established at that time.  As Defendants correctly point out, the heightened

16

"meaningful review" requirement recently laid out by the Tenth Circuit in *Toevs* did not exist at the time of incidents alleged here. *Toevs v. Reid*, ___ F.3d ___, No. 10-1535, 2011 WL 2437782 at *8 (10th Cir. June 20, 2011) (granting qualified immunity because *Toevs*' due process standard not clearly established prior to that opinion). Instead, the due process standard applicable to this case is the less rigorous one laid out in *Hewitt* and it's progeny, including the Tenth Circuit's decision in *DiMarco*.[4]  Under that standard, Plaintiff was entitled to "'(1) a sufficient initial level of process; i.e. a reasoned examination of [his] assignment; (2) the opportunity . . . to receive notice and respond to the decision; and (3) [to have] safety and security concerns . . . be weighed as part of the placement decision.'" *DiMarco*, 473 F.3d at 1344.

From the facts alleged in Plaintiff's Amended Complaint it is not clear that Plaintiff was afforded the level of process to which he was entitled under applicable caselaw.  Instead, the Amended Complaint alleges that prison officials in many instances merely rubber-stamped Plaintiff's housing assignment based on the continuing Executive Director Override, while the override was never properly reviewed by anyone with authority to rescind it.  Because genuine issues remain as to when the alleged violations may have occurred, what legal standard was in place at the time of the alleged violations, and whether Plaintiff was afforded due process under that standard, dismissal based on qualified immunity is inappropriate at this time.

---

[4]  The *DiMarco* opinion was not issued until January 24, 2007. Although this was long after Plaintiff's initial transfer to administrative segregation, it was before Plaintiff's grievances and classification challenges were brought and decided. The specific timing, however, is an issue best addressed on summary judgment after further development of the factual record and full briefing of the relevant legal questions.

## VIII.  Further Proceedings

The Court finds that a *Martinez* Report would help move this case forward and avoid unnecessary discovery delays.  *See Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978) (approving district court's practice of ordering the prison administration to prepare a report to be included in the pleadings in cases where a prisoner has filed suit alleging a constitutional violation against institution officials).  Thus, Defendants are directed to file a *Martinez* Report addressing Plaintiff's remaining claim within ninety days.  In preparing the report, authorization is granted to depose Plaintiff and interview all witnesses, including the defendants and other officers at the prison.  The report shall contain the sworn statements of all persons having relevant knowledge of the subject matter.  Where Plaintiff's claims or Defendants' defenses relate to or involve the application of administrative rules, regulations, or guidelines, copies of those documents shall also be included with the report.

Defendants shall also file a motion for summary judgment if such a motion can be supported by the evidence presented in their Martinez Report.  The motion for summary judgment shall be filed separately and shall be accompanied by a supporting memorandum.  Once the summary judgment motion is filed, if Plaintiff believes that additional discovery is necessary to respond to summary judgment, he may file a discovery motion within twenty days.  Plaintiff's discovery motion shall specifically identify the information sought and must clearly explain how the information is relevant to the issues at bar.  Within ten days Defendants may object to any discovery request that is not specifically tailored to meet Defendants' summary judgment motion or otherwise fails to comply with the Federal Rules of Civil Procedure.

Plaintiff is warned that abuse of discovery may result in the Court issuing a summary judgment decision without allowing Plaintiff further opportunity to respond.

If a timely discovery motion is not filed, Plaintiff shall have thirty days to respond to Defendants' summary judgment motion.  Plaintiff is hereby notified that in responding to a summary judgment motion he cannot rest upon the mere allegations in his pleadings.  Instead, as required under Federal Rule of Civil Procedure 56(e), Plaintiff must come forth with specific facts, admissible in evidence, showing that there is a genuine issue remaining for trial.

## ORDER

Accordingly, **IT IS HEREBY ORDERED** that:

(1) Plaintiff's Motion to Appoint Counsel (Doc. no. 23) is **DENIED**;

(2) Defendants' Motion to Dismiss Amended Complaint (Doc. no. 35) is **DENIED IN PART** as to Plaintiff's due process claim for denial of meaningful periodic reviews of his segregated confinement between April 2006 and April 2009, and **GRANTED** in all other respects;

(3) Defendant Damico is **DISMISSED** from this case; and,

(4) Defendants shall file a *Martinez* report and, if appropriate, a motion for summary judgment in accordance with this Order within ninety (90) days. Plaintiff shall respond to any summary judgment motion as directed herein.

DATED this 5th day of March, 2012.

BY THE COURT:

_____
DEE BENSON
United States District Judge